IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **MONTY RAY JORDAN** | § | |
| | § | **1:16-CV-00718-JRN** |
| V. | § | **(1:99-CR-223-JRN-1)** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE JAMES R. NOWLIN
      SENIOR UNITED STATES DISTRICT JUDGE

Before the Court are Monty Ray Jordan's Motion to Vacate Under 28 U.S.C. § 2255 (Dkt. No. 27); Jordan's Memorandum of Law in Support (Dkt. No. 34); and the Government's Response (Dkt. No. 36). The undersigned submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Court's Local Rules.

## I. GENERAL BACKGROUND

On April 4, 2000, Monty Ray Jordan, pursuant to a plea agreement, pled guilty to a three-count superseding information charging him with bank robbery, in violation of 18 U.S.C. § 2113(a) and (d) (Count 1); using or carrying a firearm during commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count 2); and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 3). The Court sentenced him to 188 months imprisonment on Counts 1 and 3, to run concurrently, and to 84 months imprisonment on Count 2, consecutive to the 188 months, for a total sentence of 272 months of imprisonment. Dkt. No. 21. The Court also imposed a five-year term of supervised release on all three Counts concurrently. *Id.* Jordan did not file a direct appeal, but has now filed this Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255, seeking a reduction of his sentence under *Johnson v. United States*, ___ U.S. ___, 135 S.Ct. 2551 (2015),

which the Supreme Court has made retroactively applicable to cases on collateral review, *Welch v. United States*, \_\_\_U.S.\_\_\_, 136 S.Ct. 1257 (2016).

Jordan originally filed his motion in 2016, shortly after the Court entered a standing order appointing the Federal Public Defender to represent all defendants previously sentenced by the Court who were, or were potentially affected by, the *Johnson* decision. In January 2017, Jordan moved for a stay of the case until the Supreme Court decided *Beckles v. United States* and *Sessions v. Dimaya*. Dkt. No. 28. That motion was granted, and the briefing schedule was suspended. Dkt. No. 29. In June 2018, the stay was lifted, and a new briefing schedule was entered, which was extended multiple times at Jordan's request, and once at the government's request. Ultimately, Jordan filed his brief on November 11, 2018, and the government filed its response on May 24, 2019. On July 19, 2019, Jordan completed the custodial portion of his sentence, and was released from the Bureau of Prisons.[1]

As mentioned, Jordan pled guilty to three offenses. In addition, his criminal history triggered application of one statutory sentencing enhancement, and two Sentencing Guideline enhancements. One of the offenses also called for the imposition of a mandatory minimum, consecutive sentence. More specifically, Jordan's felon in possession charge in Count 3 was enhanced pursuant to the Armed Career Criminal Act (18 U.S.C. § 924(e)(2)(B)), based on his prior convictions for dispensing marijuana, burglary, jail escape and aggravated robbery with a deadly weapon. This meant that instead of facing a sentence of zero to ten years of imprisonment, his sentencing range for Count 3 increased to 15 years to life. PSR at ¶ 51. Jordan claims that none of his prior

---

[1] The issues presented here are not moot as a result of Jordan's release, because he could still possibly benefit from a reduction in his sentence, both with regard to his term of supervised release, and by gaining time credit that could be applied to any sentence of imprisonment should his supervised release ever be revoked.

convictions qualified under either the "enumerated offenses" or "elements" clauses of the ACCA, and could only have qualified under the "residual clause" of § 924(e)(2)(B)(ii). Jordan argues that application of the enhancement to him violated his Due Process rights, because *Johnson* retroactively struck the residual clause as unconstitutionally vague. He contends he therefore is entitled to relief under *Johnson*, *Welch* and 28 U.S.C. § 2255(f)(3).

If that were the sole issue, this case would be easy. Unfortunately it's not. The fact that Jordan pled guilty to two other offenses makes determining whether Jordan is entitled to any relief under *Johnson* quite complicated. Jordan's other two convictions were for bank robbery, and using a firearm in committing that bank robbery. Bank robbery is a "crime of violence" under the Career Offender guideline found in § 4B1.1 of the relevant Sentencing Guidelines.[2] Under that guideline, if a defendant has been convicted of a crime of violence, and has at least two prior felony convictions for crimes of violence or controlled substance offenses, his base offense level is to be increased, with the increase keyed off of the statutory maximum sentence for the underlying offense. In the Presentence Report, the Probation Office concluded that the Career Offender guideline applied to Jordan, as the bank robbery offense was a crime of violence, and Jordan had two qualifying prior convictions: jail escape, and aggravated robbery.[3] PSR at ¶ 23. Because the maximum sentence for

---

[2]The Presentence Report, which is dated April 6, 2000, states that it used the "Sentencing Guidelines Manual which incorporates amendments effective November 1, 1999." PSR §¶ 21. The Sentencing Commission issued manuals on November 1, 1998, and November 1, 2000. There was no manual issued for 1999. The Court therefore assumes that the reference in the PSR to use of the 1999 manual was a typographical error, and that the November 1, 1998 manual was used. Consistent with this, all citations and references in this Report & Recommendation are to the 1998 Guidelines Manual.

[3]Unlike the statutory enhancement created by the Armed Career Criminal Act, the Career Offender guideline has a time cut-off of 15 years for prior convictions to be applicable. *See* U.S.S.G. § 4A1.2(e)(3). This meant that Jordan's convictions for dispensing marijuana and burglary were not considered under the Career Offender guideline.

the bank robbery offense was 25 years, the base offense level for the bank robbery charge was increased to 34. *Id.*

Another complicating factor is that the Probation Office also concluded that the Armed Career Criminal *guideline* found in U.S.S.G. § 4B1.4 (as opposed to the Armed Career Criminal *Act* contained in 18 U.S.C. § 924(e)) applied to the felon in possession charge. Under this guideline, if a defendant meets the conditions of § 924(e), he is an "armed career criminal," and the base offense level for the underlying felon in possession charge is increased. In Jordan's case the offense level for the felon in possession charge increased to 34, as he possessed the firearm in connection with a crime of violence—bank robbery. *See* U.S.S.G. § 4B1.4(b)(3)(A); PSR at ¶¶ 23, 24. Thus, the Probation Office determined that under the Career Offender guideline in § 4B1.1, Jordan's base offense level for the bank robbery charge was 34, and under the Armed Career Criminal guideline of § 4B1.4, the base offense level for the felon in possession charge was also 34. The Probation Office therefore recommended that the base offense level for both charges, which were grouped for the guidelines calculation, should be 34. *Id.* Further, under each of these guideline enhancements, Jordan's criminal history category automatically increased to VI (it otherwise would have been III). Adjusting the offense level downward three levels for acceptance of responsibility, the Probation Office calculated that on Counts 1 and 3 Jordan had an offense level of 31 and criminal history category of VI, and thus a sentencing guideline range of 188-235 months. The sentencing judge imposed a sentence at the low end of the range—188 months—on both Counts 1 and 3, and ordered that the sentences run concurrently.

Finally, Count 2—using a firearm during the commission of a crime of violence—carried a mandatory consecutive sentence (in Jordan's case, a minimum of seven years as he brandished the firearm during the bank robbery). Because of the mandatory consecutive nature of the sentence, the

guidelines were inapplicable to this charge. This meant that the sentencing judge was required to add 84 months to whatever sentence he imposed on Counts 1 and 3. Accordingly, the Court imposed an 84-month sentence on Count 2, and ordered that it run consecutively to the 188-month sentence for Counts 1 and 3, for a total sentence of 272 months of imprisonment. Dkt. No. 21 at 2. The Court also imposed five years of supervised release on all three counts, concurrently. *Id.* at 3.

In this petition, Jordan argues first that the enhancement of his sentence for the felon in possession charge under § 924(e) raises a pure *Johnson* claim, as the only way he could have had enough qualifying prior convictions was through application of the residual clause of § 923(e)(2)(B)(ii), and that clause was held to be unconstitutional in *Johnson*. The Government does not address this directly in its briefing, and the Court assumes from its silence that there is not any dispute on this limited point. Jordan also contends that his prior convictions for burglary, jail escape, and aggravated robbery with a deadly weapon could only be considered "crimes of violence" under the Career Offender guideline if the very same "residual clause" language struck down in *Johnson*, and contained in the relevant guideline definitions, is applied. He asserts that under *Johnson* the residual clause language in the Career Offender guideline is also unconstitutionally vague, and he is entitled to be resentenced without the Career Offender guideline being applied. He further argues that the Supreme Court's decision in *Beckles* (in which the Court upheld application of the Career Offender guideline when applied under the post- *Booker* guideline regime) does not bar his claim, as he was sentenced prior to *Booker*, when the guidelines were mandatory and had the force of law. The Government responds that Jordan's argument attacking application of the guideline enhancements is untimely, and that even if the Court were to resentence Jordan, the 188-month sentence imposed on Count 1 (the bank robbery count) was fair and reasonable, and remains the appropriate sentence.

## II. ANALYSIS

Jordan brings this motion challenging his sentence pursuant to *Johnson*. Under federal law a movant under § 2255 generally must file his claim for relief within one year of the date his conviction becomes final, unless one of the exceptions contained in § 2255 applies. 28 U.S.C. § 2255(f). For his timeliness argument, Johnson relies on the exception to the limitation period set out in subsection (f)(3), which states that the limitations period does not start to run until "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Jordan argues that his claims fall within (f)(3), as his claim for relief is based on the newly recognized right announced in *Johnson*, that decision was made retroactively applicable to cases on collateral review, and his motion was filed within one year of the *Johnson* decision. The Government, however, argues that Jordan's motion is untimely because his claim does not, and could not, stem from any right recognized in *Johnson*.

As already noted, part of Jordan's claim is a "classic" *Johnson* claim. His sentencing range for Count 3 was enhanced under the ACCA, from zero to ten years, to 15 years to life, and the supervised release range was increased from zero to three years, to three to five years. The sentence imposed was in fact an enhanced sentence—on Count 3 he received 188 months (15 years and 8 months) and five years of supervised release. If the enhancement was based on one or more convictions that only qualified under the portion of § 924(e) struck down by *Johnson*, then he is unquestionably entitled to relief under *Johnson*, and his motion under § 2255 is timely, as it was filed within a year of *Johnson* being decided.

6

The question to be decided as to Count 3 is thus whether Jordan's prior convictions would have qualified under the portions of the ACCA that remain after *Johnson*. To review, under the ACCA a defendant convicted of an offense under § 922(g) faced more severe punishment if he had three or more previous convictions for a "violent felony." 18 U.S.C. § 924(e)(2)(B). Prior to *Johnson*, the ACCA defined "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . . that–
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

§ 924(e)(2)(B) (emphasis added). The final phrase of this definition, italicized above, is known as the Act's "residual clause." It is this clause that the Supreme Court found unconstitutionally vague in *Johnson*. 135 S.Ct. at 2563. The *Johnson* Court clarified, however, that its ruling "does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Johnson,* 135 S.Ct. at 2563.

As noted, there are four prior convictions mentioned in Jordan's PSR as convictions that allegedly qualified him for enhancement under the ACCA: dispensing marijuana, burglary, jail escape, and aggravated robbery with a deadly weapon. Though "burglary" is one of the offenses enumerated in § 924(e)(2)(B)(ii), the Fifth Circuit has concluded that Texas burglary is not a "violent felony" for purposes of the ACCA, and would only qualify for ACCA purposes under the residual clause.[4] As for the "elements" clause, dispensing marijuana clearly does not have any element

---

[4]See *United States v. Herrold*, 883 F.3d 517 (5th Cir. 2018) (en banc), *vacated*, 2019 WL 2493911 (June 17, 2019). The Supreme Court remanded the case to the Fifth Circuit in June 2019 for reconsideration in light of *Quarles v. United States*, 139 S. Ct. 1872 (2019). In *Quarles* the Court

7

involving the use, attempted use or threatened use of physical force.[5] The same is the case for jail escape.[6] Thus, even if in *Herrold* the Fifth Circuit reverses itself after remand, at most Jordan would only have two convictions that qualify as violent felonies under the ACCA (burglary and aggravated robbery[7]). As the ACCA requires three convictions to enhance a 922(g) sentence, without the residual clause, Jordan was not eligible for an enhanced sentence on Count 3. Further, as the Armed Career Criminal guideline only applied to a "defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)" (U.S.S.G. § 4B1.4(a)), it was also inappropriate for the Armed Career Criminal guideline to have been applied to Count 3 to calculate Jordan's guideline range. In short, the correct guideline range for Count 3 should not have been 188-235 months, but instead should have been 70-87 months.[8] And rather than being subject to up to five years of supervised

---

concluded that a state burglary statute qualifies as an enumerated offense under the ACCA if the offense, regardless of its exact definition or label, "substantially corresponds" to, or is narrower than, the generic definition of burglary. *Quarles*, 139 S. Ct. at 1879-80.

[5]This conviction dates to 1971. The relevant Texas statute made it a felony offense to "distribute, leave with, give away, dispose of, or deliver" marijuana. Tex. Penal Code Art. 725b, Section 1, subsection (17) (1956).

[6]The elements of this offense are: (1) escape, (2) from custody, (3) after having been arrested for, charged with or convicted of an offense. *Garcia v. State*, 537 S.W.2d 930, 932 (Ct. Crim. App. 1976). Though the offense might have qualified as a violent felony under the residual clause, it plainly does not contain any element requiring the attempted, threatened or actual use of force.

[7]Jordan argues that the aggravated robbery conviction would not qualify under the elements clause, notwithstanding the Fifth Circuit's decision in *United States v. Lerma*, 877 F.3d 628, 630 (5th Cir. 2017), contending that *Herrold* abrogated *Lerma*. The Circuit, however, has rejected this argument, holding that "aggravated robbery under Texas law constitutes a crime of violence." *United States v. Garrido*, 736 Fed.Appx. 77, 78-79 (5th Cir. 2018); *see also United States v. Mitchell*, No. 18-10047, 2019 WL 4070686 (5th Cir. Aug. 28, 2019). It would appear, therefore, that Jordan's aggravated robbery conviction remains a qualifying conviction post-*Johnson*.

[8]Jordan's offense level would have been 28, reduced to 25 for acceptance of responsibility. PSR § ¶¶ 22, 25. Without the Armed Career Criminal enhancement, his criminal history category

release, the maximum he could have received was three years. *See* 18 U.S.C. § 3583(b)(2) (maximum term of supervised release for a Class C or D felony is three years); § 3559(a)(3) (defining Class C felony as one with a maximum sentence of between 10 and 25 years).

None of this, however, takes into account Jordan's other two counts of conviction, and the main issue Jordan raises—does the result in *Johnson* mean that the residual clause in the Career Offender definition of "violent felony" is also unconstitutionally vague? The Supreme Court considered nearly this issue in *Beckles v. United States*, 137 S. Ct. 886 (2017), and concluded that a defendant's Due Process rights are not violated when the Career Offender guideline is applied to a defendant under the *advisory* Sentencing Guidelines. The Court explained that because the Sentencing Guidelines were advisory in Beckles' case, and "merely guide[d] the exercise of a court's discretion in choosing an appropriate sentence within the statutory range," *Johnson* did not apply. *Id.* at 892. In deciding *Beckles*, however, the Supreme Court specifically left for another day whether the result would have been different had—as is the case here—the sentence been imposed *before Booker*, when a guideline sentence was statutorily mandated. *Id.* at 894-95 (repeatedly stating that the "advisory Guidelines" do not implicate the twin concerns of the vagueness doctrine).

But before a court can even reach that issue, it must determine whether that claim falls within the 2255(f)(3) exception to the one year statute of limitations contained in 28 U.S.C. § 2255. The undersigned addressed this very issue last year, and concluded that such an argument involved the assertion of the right recognized in *Johnson* and therefore fit within the exception. *See Zuniga-Munoz v. United States*, No. 1:02-CR-134, Dkt Nos. 79 and 80 (W.D. Tex. June 11, 2018). Just

---

was III. *Id.* ¶ 36. An offense level of 25, combined with a criminal history category of III results in a sentencing range of 70-87 months.

weeks ago, however, the Fifth Circuit reached the opposite conclusion. *United States v. London*, No. 2019 WL 4065601 (5th Cir. Aug. 29, 2019). The Court stated:

> The right that London asserts is that a sentence determined by the vague language of the residual clause in U.S.S.G. § 4B1.2 pre-*Booker* violates constitutional due process. This asserted right, we think is not dictated by *Johnson*; London's assertion is more properly described as a "new right" to the extent that it is a right that has not yet been recognized by the Supreme Court.
>
> * * *
>
> . . . London does not assert a right dictated by *Johnson* but instead asserts a right that would extend, as opposed to apply, *Johnson* to the pre-Booker Guidelines. His claim is therefore not entitled to the benefit of a new statute of limitations.

*Id.* at *4-6. This means that Jordan's § 2255 motion attacking the Career Offender guideline is untimely, and the Court may not reach the merits of that issue.[9] As this is the sole basis on which Jordan attacks the sentence imposed on Count 1, the bank robbery offense, he is not entitled to relief as to that portion of his sentence.

The only remaining question is whether there is a need to resentence Jordan on Count 3, given that he is not entitled to any reformation of the sentences imposed on Counts 1 and 2. As noted, when the Probation Office calculated Jordan's guidelines, it grouped Counts 1 and 3, and when the Court sentenced Jordan it ran the sentences imposed on Counts 1 and 3 concurrently. Thus, even if Jordan's sentence on Count 3 were reduced to 70 months (the low end of the guideline range when no enhancement is applied), his total sentence would remain 272 months, as the sentences on Counts 1 and 2 remain the same. Further, Jordan was released from custody on July 19, 2019, and thus only has the supervised release portion of his sentence left to complete.

---

[9]In his concurrence, Judge Costa criticized the conclusion reached in *London*, for many of the same reasons the undersigned articulated in *Zuniga-Munoz*. *London*, 2019 WL 4065601 at *6-9.

The one item where resentencing would potentially make a difference, albeit a very small and potentially irrelevant one, is with regard to the term of supervised release imposed on Count 3. As noted, Jordan was sentenced to five years of supervised release on Count 3. He is entitled under *Johnson* to have that sentence reduced to three years of supervision. The existence of a five year supervision term on Count 3 could theoretically expose Jordan to additional supervision time or incarceration in the event his supervised release were ever revoked. Given this, it be would appropriate to resentence Jordan to correct this aspect of his sentence.[10]

### III. RECOMMENDATION

For the reasons set forth above, the unsigned **RECOMMENDS** that Jordan's Motion to Vacate (Dkt. No. 27) be **GRANTED IN PART AND DENIED IN PART**, and that Jordan be re-sentenced as to Count 3 of the Judgment, as set forth in more detail herein.

### IV. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error,

---

[10]Though it will not have a practical impact on Jordan, it would likely make sense to reform the custodial sentence on Count 3 at the same time, reducing it to a sentence within the correct guideline range of 70-87 months.

shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 16th day of September, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE